[Civ. No. 16373.  Second Dist., Div. One.  July 22, 1948.]

R. E. F. BOHART, Appellant, v. MARY DOE WILTON et al., Respondents.

Jerrell Babb and Geo. W. Rochester for Appellant.

Mindlin & Levy and Joseph P. Guerin for Respondents.

DORAN, J.—This is an action for damages based on an alleged eviction.

The complaint alleges that, ''defendants promised and agreed and executed to plaintiff herein an oral lease, wherein and whereby Apartment 4 of the apartment house located at 2128 South Western Avenue was rented for a month to month tenancy at the rental rate of $19.00 for each month;.'' That plaintiff paid the rent and occupied the premises until October 20, 1946, at which time it is alleged that, ''during the absence of plaintiff from said premises, and without his consent and against his will, defendants wrongfully entered said apartment and evicted and excluded plaintiff therefrom by

removing the padlock from the door, taking and removing all of his personal effects, hereinafter described, out of said apartment and placing another padlock upon said door, and took possession of said apartment and placed another tenant in possession." It is then alleged that plaintiff, "having chronic bronchitis and a heart ailment, and during the time plaintiff was seeking lodgings, by reason of the wrongful and unlawful acts of defendants, he was forced to walk the streets unprotected from the night air, and contracted a severe cold to the impairment of his frail health and was confined to his bed, where he suffered and is still suffering from the result of the wrongful and unlawful acts of defendants by the eviction as aforealleged, to his damage." All of which, it is further alleged, was done "with the intent, design and purpose on the part of defendants to embarrass, injure and pain said plaintiff." Wherefore, the complaint concludes, plaintiff demands judgment for $5,245, and 37 cents (37¢) each and every day until possession is restored.

The trial was had with a jury and at the conclusion of plaintiff's case a motion for a nonsuit was granted. Plaintiff appeals from the judgment that followed.

Quoting from appellant's brief, "It is the Appellant's contention that the trial court committed *reversal* errors of law upon an undisputed record of facts. The issues resolve themselves into certain basic questions:

"1. Does the Appellant, in a cause of action of unlawful eviction, have the legal right to pray for judgment in damages for injuries to his health directly caused by said unlawful eviction?

"2. Does the Appellant, in a cause of action for unlawful eviction have the legal right to compensation for pain and injury as a part of exemplary and punitive damages to be included in a judgment if he prevails in proving an unlawful eviction?

"3. Can the trial court, when the issues of fact are being tried by a jury, invade the province of that jury and decide the issues of fact by way of sustaining a motion for nonsuit?"

Quoting from appellant's brief, "Respondent Grace B. Wilton had a room for rent at 2128 South Western Avenue, Los Angeles, and told Respondent Marie Mayberry she could rent it for $19.00 per month and Mrs. Mayberry told Mr. Coeply she had a room to rent. Then Mr. Coeply took the Appellant to Mrs. Mayberry and Appellant paid her $19.00

for first month's rent and $7.50 for broker's fee and cleaning. Mrs. Mayberry gave the money to Mrs. Wilton who rents and collects rents from all the tenants of the building. The rent was paid July 19, 1946, and tenancy began on July 20, 1946, and Appellant paid the rent each month up to and including November 20, 1946. On the evening of October 20, 1946, he returned to his apartment and found his padlock had been removed off the door, and another padlock put on. Respondent Mayberry and a Mr. Cihok went over, after Mr. Cihok had told Mayberry he had opened the door, and Mayberry and Cihok went into Appellant's room and removed his personal property." It further appears that the room had previously been leased to Cihok but that during Cihok's absence of a few months respondent Mayberry, at the request of appellant's friend Coeply, had rented the room to appellant. When Cihok returned, appellant's possessions were removed. In this regard, appellant testified to a conversation with Mayberry and Cihok after the "eviction" as follows:

"A. She said she had merely rented a room to me as a personal favor to Mr. Coeply, and I was supposed to be in there only sixty days and I didn't get out, and so Mr. Cihok had a lease signed by Mrs. Wilton that was made in July, and she had absolutely no right whatever to rent the room to me at all, but she had rented it as a favor to Mr. Coeply and me because she thought I was a nice fellow, but when the sixty days was up and another thirty days they decided, Mr. Cihok wanted the room back, he had a lease on it, he was the legal tenant, and they moved my stuff out while I was gone."

On cross-examination appellant testified to a conversation with Mrs. Mayberry had between about the middle of August and the middle of September while driving in an automobile in part as follows:

"Q. By MR. MINDLIN: It was some time during the drive, Mr. Bohart, you and Mrs. Mayberry had a conversation about the room? A. Yes.

"Q. And did she tell you during this drive the room belonged to Mr. Cihok who was out of town? A. She referred to it as Cy's room.

"Q. And did she during this drive ask you if you had looked for another room? A. No.

. . . . . . . .

"Q. By MR. MINDLIN: Did she tell you when Mr. Cihok was expected back in the city? A. No.

"Q. How did that subject come up? A. She just said it

was Cy's room and he would be coming back some time; she didn't say when.

"Q. And was the matter dropped then, or did she say anything further about the room? A. Dropped.

"Q. You didn't ask her what would happen to you when Mr. Cihok would come back? A. No.

"Q. You did know you would have to vacate the room when Mr. Cihok came back?

"MR. ROCHESTER: I object to that as calling for a conclusion.

"THE COURT: The objection is sustained."

The ruling was error and the evidence improperly excluded. Appellant testified to another conversation had with respondent Mayberry over the telephone as follows:

"Q. Now, after you had mailed her this money order around September 19th and prior to October 20th, during that period did you have any further conversation with Mrs. Mayberry about the room? A. Yes.

.  .  .  .  .  .  .  .  .  .  .

"Q. By MR. MINDLIN: What was said in the course of your telephone conversation? A. I told her I needed clean linen, and she said she wouldn't give me more clean linen and that was Cy's room and I would have to get out sooner or later and she wouldn't give me any clean linen.

"Q. What else was said? A. That was all that was said, and I hung up."

The cross-examination of appellant was constantly and prejudicially restricted and handicapped by invalid objections and erroneous rulings obviously due to a misunderstanding as to the distinction between proper cross-examination and impeachment, a misunderstanding which, incidentally, is not uncommon among judges and lawyers generally. Nevertheless, it is evident, from a review of the record, that the court's ruling on defendants' motion was proper. Without going into further detail, it is sufficient to note the trial court's determination that no agency existed is supported by the record, which conclusion disposes of appellant's other contentions.

The judgment is affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied August 11, 1948, and appellant's petition for a hearing by the Supreme Court was denied September 13, 1948. Carter, J., voted for a hearing.